UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


UNITED STATES OF AMERICA          CRIMINAL ACTION NO. 06-209

                                NEW ORLEANS, LOUISIANA
   VS.                       THURSDAY, MAY 27, 2010
                                10:00 A.M.
SCOTT D. LEMOINE              SECTION "A"


**STATUS CONFERENCE**
BEFORE THE HONORABLE JAY C. ZAINEY
UNITED STATES DISTRICT COURT JUDGE


A P P E A R A N C E S:

FOR THE UNITED STATES         EMILY GREENFIELD
OF AMERICA:                 U.S. Attorney's Office
                           Hale Boggs Federal Building
                           500 Poydras Street, Room 210
                           New Orleans, Louisiana 70130
                           (504) 680-3000


FOR THE DEFENDANT,          WARREN L. MONTGOMERY,ESQ.
SCOTT D. LEMOINE:           321 North Vermont Street
                           Covington, Louisiana 70433
                           (985) 893-6585


REPORTED BY:                 VICTOR D. Di GIORGIO, CCR
                           OFFICIAL COURT REPORTER
                           500 Poydras St., Room HB 406
                           New Orleans, Louisiana  70130
                           (504) 589-7782
Proceedings recorded by mechanical stenography.
Transcript produced by computer aided transcription.

1                    **P-R-O-C-E-E-D-I-N-G-S**

2                **(THURSDAY, MAY, 27, 2010)**

3            **(10 A.M.  -  MORNING SESSION)**

4                **(COURT CALLED TO ORDER)**

5           THE DEPUTY CLERK:  All rise.

6           Court's in session.

7           THE COURT:  Thank you.

8           Please be seated.

9           THE DEPUTY CLERK:  Criminal Action 06-209.  United

10   States of America versus Scott Lemoine.

11           Counsel make their appearances, please.

12           MS. GREENFIELD:  Emily Greenfield on behalf of the

13   United States.

14           MR. MONTGOMERY:  May it please the Court, Warren

15   Montgomery on behalf of Scott Lemoine.

16           THE COURT:  Thank you.

17           We're here for a status conference, but Ms. Greenfield

18   wanted this placed on the record, so that's why we're here in

19   open court.

20           Since the last time we met I had ordered that the

21   evaluation be done by the Bureau of Prisons Federal Medical

22   Center in Rochester, and they have submitted a detailed

23   twenty-two-page report that I'll file in the record, but under

24   seal, and I understand that both parties have received a copy of

25   the report, is that correct?

1                MS. GREENFIELD:  That is correct, Your Honor.

2                MR. MONTGOMERY:  That is correct, Your Honor.

3                THE COURT:  Okay.  What is the status, Mr. Montgomery,

4   if you know, or Ms. Greenfield, if you know, of the charges in

5   Tangipahoa Parish?  Does anybody know?

6                MR. MONTGOMERY:  Your Honor, I had a conversation --

7                THE COURT:  Why don't you get to the microphone,

8   Warren, so I can hear you.

9                MR. MONTGOMERY:  Sure.

10               The charges are still pending, both the misdemeanor

11  charge, the cyberstalking, and the felony charge of murder for

12  hire.  I'm not sure if that's the technical language.

13               THE COURT:  Solicitation.

14               MR. MONTGOMERY:  Solicitation for murder.  Thank you,

15  Your Honor.

16               To the best of my knowledge, I have not checked the

17  Court record in the last two weeks.  I did have a conversation

18  with Don Wald who's the first assistant.

19               HE COURT:  You're not defending Mr. Lemoine in state

20  court?

21               MR. MONTGOMERY:  I am.  I am, Your Honor.  I'm counsel

22  of record in state court, and I did have a conversation with him

23  two-weeks ago, approximately two-weeks weeks ago, and at that

24  time they were still pending.

25               He indicated to me that he was going to file a motion

1  to recuse his office from the prosecution of those charges.  I

2  don't know, I have not spoken with him.  I was on vacation last

3  week.  I haven't spoken with him since that time to confirm

4  that, but my conversation with him was on a Monday and he told

5  me it was his intention to file the papers on Tuesday.

6            Mr. Lemoine has never been arraigned in state court.

7            THE COURT:  When was he arrested on this?

8            MR. MONTGOMERY:  He was arrested in December.

9            THE COURT:  Well, but he's not incarcerated, he's in

10  Rochester?

11            MR. MONTGOMERY:  That's correct.

12            THE COURT:  Has bond been set in the state charges?

13            MR. MONTGOMERY:  Yes, Your Honor.

14            Bond was initially set on the misdemeanor charge when

15  he was arrested, and I'm going to say approximately

16  December 16th, sometime --

17            THE COURT:  When he was arrested for cyberstalking?

18            MR. MONTGOMERY:  That's correct, Your Honor.

19            THE COURT:  And then when he was in jail --

20            MR. MONTGOMERY:  And when he was in jail, that's

21  correct, he was subsequently rearrested, if you would, charged

22  with the felony.  And he was in jail, I think I want to say,

23  Your Honor, until January sometime when he was transferred to

24  federal custody, and that's subsequently been in the --

25            THE COURT:  But still, even if I released him today,

1    which I'm not going to do, but even if I released him today, he

2    would not be getting out of jail, because he still has a bond

3    for the solicitation case, I'm assuming.

4           MR. MONTGOMERY:  That's correct, Your Honor.

5           I would not want to state unequivocally that he would

6    not be released because I understand that he had met his state

7    court bond.

8           THE COURT:  Oh, he did meet it, okay.

9           MR. MONTGOMERY:  And that is why he was transferred

10   into --

11          THE COURT:  Federal custody.

12          MR. MONTGOMERY:  -- federal custody.

13          That again, I would want to --

14          THE COURT:  Well, my assistant tells me that's when it

15   was.

16          MR. MONTGOMERY:  I would want to verify that, and to go

17   further into some detail.  There was an issue of a -- he had

18   been released -- my understanding of the state bond is there was

19   a requirement that he have a GPS tracking device, and initially

20   they couldn't find the GPS tracking device for almost two-weeks,

21   so presumably if they had found the GPS tracking device they

22   could place that on him, he could meet his bond conditions and

23   he would be released from state court.

24          THE COURT:  Do you recall the amount of the bond?

25          MR. MONTGOMERY:  If you can give me just a second, Your

1    Honor, and I'll verify that.

2            THE COURT:  Yes.

3            MR. MONTGOMERY:  The initial bond on the cyberstalking

4    was set at $25,000 on December 22nd of 2009.  However, it was

5    increased to $100,000 with a requirement that Mr. Lemoine wear a

6    GPS monitoring bracelet.

7            I think subsequent to that, it I may have been

8    increased again, but my records here show that it was $100,000

9    with the requirement that he have a GPS monitoring device.

10           THE COURT:  For the solicitation charge --

11   cyberstalking charge?

12           MR. MONTGOMERY:  That's correct, Your Honor.

13           THE COURT:  Okay.  The misdemeanors were only $500

14   bonds, but that was $25,000?

15           MR. MONTGOMERY:  It was somewhat unusual, possibly

16   considering the nature of the charges that the cyberstalking

17   involved a state district court judge.

18           I'm sorry, I forgot where we left off.

19           What else?  What other questions was the Court asking

20   me.

21           THE COURT:  No, that's it.  I wanted to know the amount

22   of the bond and if he's been technically released from that

23   bond, and it's your understanding, and it's the Court's

24   understanding that he had been released from that bond that's

25   why we have him in federal custody now.

1          Prior to your representation, I know a question that

2   you had had was why was he detained.  One of the conditions of

3   his release was that he refrain from -- in other words, he was

4   picked up by the feds for two main reasons, and, Emily, correct

5   me if wrong.

6          One was violation, based on the fact of narcotics and

7   he admitted, I believe to marijuana use, and the second, of

8   course, was he was supposed to refrain from criminal activity,

9   and he had these two charges against him.

10         Mr. Chaney, who was his public defender, at the trial

11  in which he was found not guilty by reason of insanity, defended

12  him as well, at this revocation hearing, and they stipulated on

13  the record in open court to the marijuana -- the probation

14  officer was here, and he admitted to the probation officer, as I

15  recall, his marijuana usage on at least one occasion, which I

16  believe actually he admitted in this report as well.  So we all

17  discussed this and I revoked him based on the violation of the

18  condition as related to the drug charges without going into the

19  merits of this solicitation because Mr. Chaney did not really

20  want there to be a mini trial in federal court on the state

21  court issue, and that's when actually the parties agreed, as I

22  recall, am I accurate?  Okay.  That I would detain him or I

23  ruled that I was going to detain him, but based only on the --

24  and actually Ms. Greenfield did not even proceed, although she

25  could have, on the other grounds for revocation, the

1    solicitation issue.  There was no reason to do that, since every

2    one did agree that he be detained or be revoked on the drug

3    issue.  At which time I sent him to Rochester for a complete

4    evaluation.  You got involved in the case.  We've had at least

5    one, maybe two status conferences.  I think we've had two.  One

6    you were in chambers, and maybe you were on the phone, I don't

7    remember now, but the record will reflect whatever it is.

8            Madam Probation Officer was with us.

9            Thanks.  I know you have to get out of here too.  So

10    we'll try to cut to the chase.

11            While I have you here, Jill, do you have any comments

12    at all?

13            MS. SCHNECKENBURGER:  No, Your Honor.

14            It's the opinion of the probation office at this time

15    that this matter is closed in this Court until we hear from the

16    Court of Appeals on the appeal, or if, in fact, someone else

17    moves or petitions this Court for further action.

18            THE COURT:  Now, remind me.  What is appealed?  I know

19    that's the position of the government as well.

20            What was appealed?

21            MS. SCHNECKENBURGER:  The revocation was appealed.

22            THE COURT:  By Mr. Montgomery?

23            THE WITNESS:  By the defense.

24            THE COURT:  Was that you, Warren, or was that Mr.

25    Chaney?

1            MR. MONTGOMERY:   That was me, Your Honor.

2            THE COURT:   Okay.  And what was appealed?  The fact

3    that I did not cut him loose?

4            MR. MONTGOMERY:   No.  I think the specific issue was

5    that the standard that was used to revoke him was an

6    inappropriate standard.

7            MS. SCHNECKENBBURGER:   That it was based on the

8    violation rather than his dangerousness.

9            THE COURT:   Okay.  Well, what is the status of your

10   appeal?  It's pending?

11           MR. MONTGOMERY:   It's pending.

12           It's pending, Your Honor.  I think there was just maybe

13   a week or two ago, there was a motion to dismiss the appeal by

14   the state, and the --

15           THE COURT:   By the government.

16           MR. MONTGOMERY:   By the government.

17           THE COURT:   You used to work for those guys, you

18   remember that?

19           MR. MONTGOMERY:   And my understanding is that the Court

20   of Appeals ruled against the dismissal, so the appeal is still

21   alive before the Fifth Circuit.

22           THE COURT:   Okay.  Well, isn't the law then, and I know

23   it's the government's position and probation's position, that if

24   there is an appeal pending that I don't have jurisdiction.

25   Isn't that the law?

1    MS. GREENFIELD:  Well, Your Honor, just so we can

2    clarify what the government's position is, and I appreciate

3    having this status conference on the record in chambers, because

4    one of the issues --

5    THE COURT:  In open court you mean?

6    MS. GREENFIELD:  Right.  In open court.

7    THE COURT:  Since it's on the record, we want to make

8    sure it's accurate.

9    MS. GREENFIELD:  Is that Mr. Montgomery in his filings

10   on behalf of Lemoine in the Fifth Circuit has stated that the

11   Court had submitted reversible error because there was no

12   evidentiary hearing at the January 11th, 2010 revocation.  There

13   was no evidentiary hearing and no finding of dangerousness,

14   which under the statue for revocation there needs to be that

15   finding of dangerousness.

16   The government's position, as I think the Court was

17   trying to kind of put back together the record and things that

18   had happened at that January 11th, 2010 hearing, is that it's

19   the government's position that the evaluation bears out the fact

20   that --

21   THE COURT:  Excuse me a second.

22   Jill, you can leave if you want.

23   MS. SCHNECKENBURGER:  I have a few more minutes, Your

24   Honor.  Thank you very much.

25   THE COURT:  I see you looking at the clock.

1          MS. SCHNECKENBURGER:  I'm going to back out quitely

2     when it's time.

3          THE COURT:  I know you have a preset matter.

4          All right.  Go ahead.

5          MS. GREENFIELD:  It's the government's position that

6     not only was Lemoine's use of drugs a clear violation of your

7     conditional discharge order, and, then, of course, it was

8     admitted to you, but that it was indicative of dangerousness.

9     And one thing that I think is significant and where the Court

10    mentioned it, was that the counsel here were trial counsel for

11    Lemoine in 2007.  At that trial, I'm sure the Court will recall,

12    the government countered his NGRI defense with a voluntary

13    intoxication argument, presenting evidence that he abused

14    methamphetamines, he abused marijuana, and the government argued

15    that if he was insane he made himself so with those drugs.  That

16    caused him to not only become delusional fixate on his plan to

17    destroy Monsanto and Posilac, but also to carry it that one step

18    further.

19         THE COURT:  And I believe that's sort of been borne out

20    by this evaluation.

21         MS. GREENFIELD:  Exactly.  I think that the parties

22    were all on the same page that here you had the admission, yes,

23    I'm using marijuana again, but that condition was clearly tied

24    to Mr. Lemoine's continued mental stability as well as a risk of

25    dangerousness to the community.  If he got back on illicit

1   drugs, there was going to be a danger to the community.

2        THE COURT:  Let me ask you this:  You're making a great

3   argument to the Fifth Circuit, but I'm just a district Judge.

4        There's a little dilemma here and a procedural dilemma,

5   and I'm not sure, and that's what I'd like to discuss with you.

6        The procedural dilemma is I believe -- well, Warren,

7   let me ask you this:  Do you have any authority that would

8   indicate that I do have jurisdiction while this matter is on

9   appeal, because I've always been under the impression that once

10  the matter is appealed that I don't have jurisdiction until the

11  Fifth Circuit rules.

12        MR. MONTGOMERY:  Yes, Your Honor, I do believe you have

13  limited jurisdiction.  You don't have jurisdiction over the

14  issues which are the subject of the appeal themselves.

15        THE COURT:  Yes.  But that's what this whole case is

16  about though is the issue that's been brought up to the Fifth

17  Circuit now.

18        MR. MONTGOMERY:  Correct.  You're divested.

19        And I have a rather lengthy, about a 30-page motion,

20  which I have not yet filed with you only because I've only

21  received the report from Rochester.

22        THE COURT:  Well, you were sparing me because you knew

23  that I was reading all this report.

24        MR. MONTGOMERY:  I just haven't had a chance to

25  synchronize this recent information that I got from this report

1   with the other information that I've had, and, in fact, I've

2   received basically no discovery whatsoever concerning any of the

3   allegations until about a week or so ago when the state provided

4   me with some information.

5            THE COURT:  The state.  Not the government?

6            MR. MONTGOMERY:  Not the government.

7            The District Attorney for the Twenty-First Judicial

8   District.

9            THE COURT:  What is your motion that you have not yet

10  filed that you believe that you will claim to file?

11           MR. MONTGOMERY:  In that motion I discussed the

12  jurisdictional issue.  I'm happy to read part of the --

13           THE COURT:  Well, no, because Emily will need the

14  opportunity to respond to it any way.

15           MR. MONTGOMERY:  But any way, within the motion there

16  is a basis and it cites cases etcetera which would grant this

17  Court or would make clear to this Court --

18           THE COURT:  But is it not the heart of this issue what

19  is pending before the Fifth Circuit now?

20           I mean, I agree with you that if there's different

21  issues that are on appeal I don't lose jurisdiction over other

22  issues, but it seems to me that the crux of your argument to the

23  Fifth Circuit is really what we're here for today.

24           MS. GREENFIELD:  And, Your Honor, let me say that,

25  because you only --

```
 1              THE COURT:  Am I mistaking something?

 2              MS. GREENFIELD:  Because you only made a ruling as to

 3    revocation, you only stated in your order that you were

 4    addressing the marijuana violation, the two other grounds for

 5    revocation are still out there, and obviously Mr. Montgomery in

 6    his filings to the Fifth Circuit, as well as the government who

 7    moved to dismiss the whole appeal based on an interlocutory

 8    nature, the parties obviously contemplated coming back to the

 9    Court to have more discussion on this.  And, that's, you know,

10    again one of the aspects from the proceedings below was the

11    realization that the original mental health facility that Mr.

12    Lemoine had been ordered to be under the direction of went out

13    of business, but it wasn't really a good tracking of his mental

14    health at the time we all got together.  So I think it was

15    contemplated especially with the expedited manner in which you

16    were ordering him to get to a facility to get a mental health

17    evaluation that all of this would be revisited.  Perhaps, and

18    again, I would like to have Mr. Montgomery, if he's going to

19    file a motion with this Court, a chance to really brief and look

20    at all the legal issues, but that there would be any opportunity

21    for us to continue to have proceedings on, if not the totality,

22    all three grounds for revocation at least the cyberstalking or

23    solicitation of murder, which again in the government's position

24    is, I think  the government's always had this position, is that

25    we're not here to prove criminal charges on either guilt or
```

1     innocence on those two, but rather whether he continues to

2     suffer from a mental illness and whether, you know, the actions

3     that committed for this Court's perspective continue to show

4     that he needs to be on under medication, that he needs to be

5     still supervised before he can have a conditional discharge.

6          THE COURT:  Well, in reading this report, the problem

7     then becomes, I think that everybody agrees that he still needs

8     to e on medication.  The problem is, who can force him to take

9     medication.  When he's on medication he doesn't really have a

10    problem.  It's when he's off his medication is when he has all

11    this aberrant behavior, is what I read, you know.

12         MS. GREENFIELD:  And I think that's something that's

13    just by the nature of the civil commitments that this happens

14    quite frequently.

15         THE COURT:  The problem that we have now though is, I

16    don't believe Rochester is treating him, they merely evaluated

17    him.

18         MS. GREENFIELD:  It's my understanding that they have

19    started a medication regime, BMM, not AMB.

20         THE COURT:  You're right, it begins with an A.

21         MS. GREENFIELD:  Abilify.

22         THE COURT:  You're right.

23         MS. GREENFIELD:  If I could find the page of the

24    report.

25         THE COURT:  It's towards the end.  I recall that now.

1              MS. GREENFIELD:  It is on page 19 of my fax page before

2      the Diagnostic Impression.  He's getting Abilify.

3              THE COURT:  Well, let me ask you all this:  You know,

4      the bottom line is this:  If I don't have jurisdiction.  I don't

5      have jurisdiction, and then we have to wait for the Fifth

6      Circuit.  But what if, and I'm not suggesting that Mr.

7      Montgomery do this, okay.  But what if he abandoned his appeal?

8      Okay.  In other words, the government has moved to dismiss the

9      appeal.  What if the appeal did not exist and this Court had the

10     case, again?  Okay.  Or what if he's successful in his argument

11     that even though that issue is on appeal that I haven't lost

12     jurisdiction, although I have a hard time agreeing with that at

13     this point, but I'll read what he has to say.  But if he

14     abandoned his appeal, and I have this case, then what is left

15     for me to do?  What is left for me to do, I understand, is to

16     have a hearing.

17             You're shaking your head.

18             MS. SCHNECKENBURGER:  There is no hearing before this

19     Court, Your Honor.  Nobody has petitioned for a hearing.  If the

20     defense wanted to petition for this to be reopened.  Once Your

21     Honor revokes the case, the case is no longer.  He is now in

22     there as a civil commitment, and until the doctors at Rochester

23     move to have him conditionally released or someone else moves to

24     have him conditionally released, he's civilly committed, and

25     that is it, it's over.

1          MR. MONTGOMERY:  Your Honor, can I address that?

2          THE COURT:  All right.

3          MR. MONTGOMERY:  I agree with exactly with what you're

4     saying but that's -- the title of this motion, which I'm going

5     to submit, which the only reason I hadn't submitted this motion

6     is because I didn't have the discovery and I didn't have the

7     report is an omnibus motion for discovery, subpoena deuces

8     tecum and unconditional discharge.

9          So the whole point of this motion is to set this thing

10    for hearing for you to make a determination as to whether or not

11    he should be discharged or not discharged based on the facts in

12    this case.

13         THE COURT:  Well, what is before the Fifth Circuit now?

14         MR. MONTGOMERY:  Well, that is to whether or not he

15    should be -- whether or not the proper standard was used in the

16    revoking him and ordering him to be put before the -- having him

17    analyzed, so to speak, or having this mental evaluation, whether

18    the proper standard was used, that's what's before the Fifth

19    Circuit.

20         But whether the Court agrees with me -- again, I'm

21    assuming that you have jurisdiction, or assuming that the Court

22    of Appeal -- that the appeal is dropped, my point in all this is

23    -- my purpose is to bring him back before this Court so the

24    Court can address the factual issues of whether or not his

25    actions, in fact, justify the conclusions of the doctors in this

1   medical report, and I think once the Court has the opportunity

2   to evaluate the allegations in the state court and the lack of

3   factual basis for those allegations that the Court will have a

4   very good perspective.

5          THE COURT:  So what you're suggesting then is, because

6   right now, in its evaluation they certainly do not recommend

7   that he be discharged.  I mean, it's very clear.

8          So then what you're suggesting is that this hearing

9   would be on the merits of not necessarily of guilt or innocence,

10  but whether or not a preponderance of the evidence would show

11  that he's still a danger,

12         MR. MONTGOMERY:  That's correct, Your Honor.

13         As I read the report, and, again, it's a lengthy, I

14  think a very well-written report, but very lengthy report, I

15  haven't had as much time as I would have liked to have had to

16  analyze it, but they make their decision based on two facts.

17  One, that there is a persecutory, for lack of a better word,

18  complex, and another one a grandiose complex, so to speak, and

19  they make those determinations based on, in large part,

20  persecutory is what the state court authorities have been doing

21  with regards to him, and I think that's the basis of this Court

22  looking at the evidence and determining whether or not he is

23  reasonable in believing that he has been persecuted by the state

24  court authority, but that's a reasonable belief.  And the other

25  issue is whether grandoise analysis is whether or not his --

1   their conclusion is appropriate based on the facts of this case.

2        And the facts have never been -- the only facts that

3   have brought to this Court for the Court's consideration was the

4   marijuana use which he stipulated to.  These other facts have

5   never been brought before this Court.  The Court's never had an

6   opportunity to hear them.

7        THE COURT:  Because the Court felt that it wasn't

8   necessary and both counsel agreed.  I mean, that's the point,

9   because when we could have had a full-blown hearing on the whole

10  kit and caboodle, but it was defense counsel at that time's

11  decision.  I think it was a wise decision, quite candidly, to

12  not try this case in two different venues.

13       Well, I guess there's just nothing to do at this time.

14       What I don't want to happen is, I don't want this guy

15  to get lost in the system.  Obviously he's got competent counsel

16  with you, Warren, so that's not going to happen.  At least at

17  this point he's being treated in the system, so that's a good

18  thing.  File whatever motion you have.

19       Emily, I'm going to give you 15 days to respond.

20       MS. GREENFIELD:  Okay.

21       THE COURT:  That will be 15 days from the date that he

22  files it.

23       Again, I don't know the complexity of the motion.  If

24  you need more time, file an extension if you need it.

25       MS. GREENFIELD:  Exactly.  Thank you, Your Honor.

1      THE COURT:  I just don't know.  I'm trying to put this

2  on the fast track, because we do have a person who's locked up

3  on -- as it boils down to at this minute he's locked up on this

4  marijuana issue.  Although it's more severe than that.  It's

5  marijuana which causes violence is what it is, is why he's

6  locked up, because he hasn't been ruled on.  He's out on bond on

7  the stalking and on the solicitation issue.

8      MS. GREENFIELD:  And, Your Honor, just to clarify a

9  couple of things.

10      In terms of the bond.  Obviously, yes, the bond has

11  been set.  His family was able to meet the bond's requirements

12  in terms of the cash money involved.  I don't know that the GPS,

13  as Mr. Montgomery is saying, the GPS had been fully put on in

14  any of that where he was walking out the door and the marshals

15  picked him up.  That's not my understanding.

16      Also in terms of locked up.  He's hospitalized right

17  now, and the only reason I stress that is because in both of his

18  filings to the Fifth Circuit he has repeatedly, Mr. Montgomery,

19  has repeatedly talked about how this Court had indefinitely

20  jailed Mr. Lemoine, and I don't think that that was the Court's

21  intention.  He's not being jailed, he's being held at a hospital

22  facility at Rochester, Minnesota.

23      THE COURT:  But the key words are he is being held

24  against his will.  So that's the bottom line.  I mean, at least

25  the Court is a little bit comforted in knowing that he's

1    receiving some sort of treatment, at least, but by the same

2    token, you know, if a person's locked up against -- detained

3    against his will be it in a medical facility or a penal

4    facility, the Court has to make absolutely sure that there is a

5    legal basis for him to be -- for his freedom, of course, to be

6    limited as to what it is now.

7            All right.  With that said, today was merely a status

8    conference.  I understand the next step is Warren will file, and

9    I heard what Jill said that there's really nothing before the

10   Court, and, Emily, I think you've argued this in the past

11   anyway, but there's nothing before the Court now on this, that

12   he was revoked.  He was revoked legally.  And until such time as

13   the medical team in Rochester allows him to be released that he

14   remains revoked, and that if that isn't correct, I'm looking

15   again at this report that was prepared and signed on May the

16   18th, and May the 19, 2010 in which they have recommended that

17   he still has issues and he still continue treatment there at

18   that facility, and that they do feel he's a danger to society.

19   I do recognize that.  So there is technically and legally

20   nothing before the Court at this time.

21           Warren is filing a motion, which Emily will respond to

22   and I will take it up at the appropriate time.

23           But, Warren, I would also say that in the meantime if

24   the charges don't seem they're likely to go away within the near

25   future in the state court especially if they haven't even

1   rescued themselves yet, they're going to be sent to the, I
2   guess, the AG's office, who will appoint either someone in his
3   office or another jurisdiction, the DA's office to handle it.
4   So realistically there's no way there's going to be any
5   conclusion to the charges within a month.
6          Although cyberstalking, if that's a misdemeanor, that
7   will prescribe I guess in December, isn't that -- don't they
8   still a year to -- there's been no Bill of Information  filed,
9   is that correct?
10          MR. MONTGOMERY:  No, there has been.  I believe there
11   has been a bill of information for cyberstalking.
12          MS. GREENFIELD:  Yes.
13          MR. MONTGOMERY:  And also with the felony.
14          THE COURT:  So charges have been accepted?
15          MR. MONTGOMERY:  Yes, Your Honor.
16          THE COURT:  Okay.  All right.
17          MS. GREENFIELD:  Charges have been accepted.  As far as
18   I know, I spoke to Mr. Wald yesterday.
19          Mr. Montgomery has a complete discovery package from
20   the state on those charges, that they can writ Mr. Lemoine if
21   they choose to their custody, and that brings up I think the
22   final issue for today is the Rochester's evaluation.
23          It's my understanding that this is owned by the Court
24   now, and I think that it would be something that would be
25   informative for the state to have because obviously they may

1   have insanity issues, a sanity commission that they would have

2   to go through to pursue their charges, but is the state allowed

3   to see those?

4           THE COURT:  No.  I've sealed it.  If they want to move

5   for me to unseal it we'll have a hearing on that, and Mr.

6   Montgomery can agree or object that at that time.  This was for

7   my purposes only.  For the Court's purposes.  This hearing's

8   purpose.  For defense counsel and the government's purposes for

9   purposes of this matter in Federal District Court.  No, this

10  matter is sealed.  I'm just not going to let anybody look at it.

11          You can certainly make the state aware that it exists,

12  but let the state, if they want to request it, request it at

13  which time Mr. Montgomery might not have an objection to it or

14  he might object to it, at which time they will have to come in

15  and tell me why they are entitled to it.

16          MS. GREENFIELD:  Right.  Well, again, given that some

17  of the issues in it and related to their cyberstalking case, I

18  think again they would be interested in the fact that they have

19  a patient who now has been deemed, you know, evaluated and

20  deemed delusional, but --

21          THE COURT:  You might want to tell them that.

22          MS. GREENFIELD:  I guess I was envisioning protective

23  orders or something to that effect for them to be able to see

24  that.

25          THE COURT:  Let them ask for it.

1          MS. GREENFIELD:  Okay.

2          THE COURT:  Let them ask for it --

3          MS. GREENFIELD:  I just wanted to clarify it.

4          THE COURT:  -- and in all likelihood, I don't see any

5     reason for them not to get, but Mr. Montgomery, after thinking

6     about it, might want to oppose that and I will have to take that

7     up as well.

8          I guess my thought though is if the Bill of Information

9     has been filed in state court on a misdemeanor for some reason

10    you know, my Code of Criminal Procedure for state, they only

11    have a limited time within which they can actually try him

12    because the defendant hasn't requested continuances, it's the

13    state's obligation to try him within, I thought it was six

14    months, maybe it's a year from the date the Bill of Information

15    was filed.  Now, that's on a misdemeanor.  We have the more

16    serious charge, the solicitation charge.  I'm just thinking out

17    loud, that's all, because I'm trying to get a handle on it.

18         MS. GREENFIELD:  To have him present would require a

19    writ, and for this Court to grant a writ to the state to get the

20    body, I think it's also going to be complicated by factors of

21    whether or not there can be some type of conditional discharge.

22         THE COURT:  The state hasn't moved for anything?

23         MS. GREENFIELD:  I know.

24         THE COURT:  You're the federal prosecutor, not the

25    state prosecutor.

1          MS. GREENFIELD:  Exactly, Your Honor.

2          THE COURT:  If the state drops the ball, and doesn't --

3          MS. GREENFIELD:  We shadow some type of down the road

4     issues that --

5          THE COURT:  Well, that's up to state.  I mean, the

6     state has done absolutely nothing to prosecute this man, to

7     pursue prosecution of this man.  They filed a bill and they've

8     been sitting on this, and that's not fair either, okay.  And,

9     you know, I mean, they could have pros -- we talked about this

10    in chambers last time, because I asked you all what has the

11    state done to try -- if they're convinced they have a case

12    against this man on these other charges, then they should pursue

13    it, okay, but if not, then they shouldn't pursue it.

14         Now, they're saying the Bill of Information has been

15    filed now for a month or two, and now they're telling defense

16    counsel that, well, yeah, we're going to recuse ourselves.

17    Well, they knew that the solicitation of murder of a state court

18    judge, you know, was pending.  I mean, they filed the Bill of

19    Information against them, and they didn't recuse themselves

20    then.

21         It's not fair to the defendant for the state to be

22    sitting on this, and that's why the State Code of Criminal

23    Procedure has its rules that they've got to pursue prosecution

24    within a certain time.  That's all that I'm stating.  I'm not

25    opining on it, because I'm no state court judge, but if the

1    stalking charge's going to be dismissed because of untimeliness

2    by the state, now solicitation is a different matter, I think

3    that's two or three year statute of limitation, so there's

4    plenty enough time, but I'm not looking at the solicitation

5    because the state hasn't prosecuted on that and they're choosing

6    not to, so it's un fair for me to hold it against this man on

7    the solicitation part, because the state hasn't chosen to

8    prosecute, so I can do one or two things right now.  You say I

9    can't do anything.

10           MS. GREENFIELD:  Well, we -- again, just to make sure

11   that the Court understands -- we moved the Fifth Circuit to

12   dismiss his appeal based on the interlocutory nature.

13           THE COURT:  Right.

14           MS. GREENFIELD:  So it was always the government's

15   position that this matter wasn't over, that we were coming back

16   to these issues.

17           Just Monday the Fifth Circuit dismissed that motion,

18   "No Reason, Pro Curiam Denied."  Whatever that means, whatever

19   that means.  However, again, I don't know that it is just an

20   issue, because it's a legal issue that nobody has briefed

21   whether or not there is a div -- the court's divested.  Again, I

22   think that looking at the fact that the Court held open two

23   grounds for revocation --

24           THE COURT:   You see what I don't understand, and,

25   Warren, nothing that I say should be construed as my suggesting

1    that your client does not have a right to appeal, and nothing

2    that I say will suggest at all that I'm suggesting that your

3    client waive his right to appeal.  I'm not saying that at all.

4         What I'm saying is that if I don't have jurisdiction I

5    can't do anything.  If I do have jurisdiction, then I still

6    question what -- I don't know how I'm going to act any

7    differently if -- unless the Fifth Circuit says your guy comes

8    home, and I would find that hard to believe, okay, then I don't

9    know if there's no appeal pending how that is any different than

10   for the Fifth Circuit to -- well, let me ask you this:  What

11   relief are you requesting with the Fifth Circuit?

12        Let's get specific.  What relief were you requesting?

13        MR. MONTGOMERY:  Your Honor, let me go back and review

14   my notes because there's a lot of complex multi layers to this

15   case, so I don't want to mis --

16        THE COURT:  Well, I tell you what.  You don't have to

17   do all that.  But you see the point is I've only ruled on the

18   marijuana, on the drug, okay.  So let's say the Fifth Circuit

19   says that I was correct or I was incorrect.  Let's say I was

20   incorrect, okay.  Then I still haven't even ruled yet on the

21   solicitation issue, okay, which causes the danger to society,

22   etcetera, okay.  So it seems to me at the end of the day,

23   regardless of the ruling of the Fifth Circuit, I'm going to have

24   to hear something be it the marijuana that I was correct on or

25   if not the solicitation, and as I recall, Mr. Chaney did not

1   want to really get into the state court proceedings, for

2   whatever reasons he had on his mind.  But it seems to me, even

3   if the Fifth Circuit reverses me and says I should not have

4   revoked him or whatever on the marijuana, then my guess is the

5   government's going to say, well, Judge, we're still going

6   forward on the solicitation, and the fact that the state court

7   judge hasn't ruled, okay, does that mean that I have to have a

8   mini trial on the solicitation issue?  Which if it is, it is,

9   and I will do it, but I'm not sure that it's speeding up any

10  issues for your client.  I'm just thinking out loud.  I'm not

11  suggesting that you not pursue it, because you've got every

12  right to do that, and, again, I'm trying to give you every

13  benefit of the knowledge that I have, the procedural knowledge

14  of what I have and what Emily has since you weren't here when

15  all this was done.  But it was decided by your predecessor and

16  agreed to really by the government that the only issue that

17  there would be the revocation on would be on the marijuana

18  issue, but at no time did the government waive the other issues,

19  so they still have that sort of laying in wait.  So that even if

20  the Fifth Circuit reverses me on the marijuana issue, the

21  government certainly has in its arsenal to proceed with the

22  solicitation, which if the state decides tomorrow to dismiss all

23  charges against this guy, solicitation and cyberstalking, then

24  that means the only thing that's left is the marijuana, and if

25  the Fifth Circuit says I was wrong, then I guess there's no

1    reason to keep him in the federal facility, but the issue of the

2    solicitation has not yet been addressed either by the government

3    or by the state.  If the state drops it, they'll tell the

4    government that and the government still could pursue a

5    revocation on the allegations that were made, because I don't

6    believe the government has to prove that beyond a reasonable

7    doubt, but that's not really before me at all right now.

8            MS. GREENFIELD:  Right.  And the cyberstalking, again,

9    the government is not on its way to cyberstalking.  The

10   cyberstalking, it is clear from the pattern of the cause

11   oriented that Mr. Lemoine decided that he was going to intervene

12   and rally against what he considers to be the evil doings of

13   three women in Tangipahoa Parish very much like his prior

14   conduct.

15           THE COURT:  So you're even telling me that even if the

16   state charge of cyberstalking is dismissed procedurally because

17   of failure to prosecute that still would not preclude --

18           MS. GREENFIELD:  Right.  I don't think it precludes

19   this Court from the fact that for three years since the trial

20   you've had the ability to keep your eye on Mr. Lemoine, because

21   he was found to be a danger to society and criminally insane,

22   and that, you know, this is allowing him not to fall through the

23   cracks for society and for his own good.  It's not a desire to

24   try to, you know, keep him down, which I think is kind of in the

25   theme that --

1        THE COURT:   Let me ask you this:  You moved that the

2    appeal be dismissed?

3        MS. GREENFIELD:  Correct.

4        THE COURT:  And it was denied.  If the Fifth Circuit

5    would have granted the relief that you requested, what if

6    anything would the government have then done?

7        MS. GREENFIELD:  I think that once we got this, we

8    would probably be coming back in here for sentences where Your

9    Honor, if Your Honor wanted to, or if Mr. Montgomery, it seems

10   like he's wanting to do now, is kind of revisit the issue of the

11   grounds for the revocation.

12       I mean, it seems to me, Mr. Montgomery, correct me if

13   I'm wrong, but that the argument is there wasn't a finding of

14   dangerousness.  There wasn't all this information put on the

15   record, that was the clear error.  So to have an evidentiary

16   hearing so there can be that finding by the Court with a

17   full-blown evidentiary hearing is the relief he's seeking.

18       THE COURT:  So that's what you kind of sought of

19   foresee for the future?

20       MS. GREENFIELD:  We could also, you know, to be

21   contemplating in the future motions to remand for creating a

22   record.  I mean, that's from our perspective what we see that

23   Mr. Lemoine's counsel wants, is that they want their day in

24   court to make sure that they have the evidentiary hearing

25   regardless of the fact that, yes, they left open their objection

1    -- the grounds of the revocation that they had objections to,

2    that was left open, that wasn't touched.  They didn't have

3    witnesses ready, but that they did stipulate, yes, I smoked the

4    marijuana and that I agree to have this mental health

5    evaluation.

6        THE COURT:  All right.  Putting all of that aside,

7    again we now have this evaluation hot off the press in which

8    they state on page 21, "Mr. Lemoine continues to be meet

9    criteria for commitment under 18, USC, 4243.  We believe he

10   continues suffer from a mental disease or defect such that his

11   unconditional release from custody would create a substantial

12   risk of bodily injury to another person or serious damage to the

13   property of another.

14       Second, there is currently no state placement available

15   for Mr. Lemoine.

16       Third, there is no community placement currently

17   available for a conditional release under a prescribed regimen

18   of care.  If such placement becomes available with a structured

19   after care plan, the Risk Assessment Panel will reconvene and

20   consider recommending a conditional release under a prescribed

21   regimen of care."

22       It seems to me, Warren, maybe the way to proceed, and

23   you're a much better lawyer than I ever was, but it seems to me

24   the way for you to proceed right now might be to just look at

25   the last page of what these guys recommendations are and cut to

1   the chase, because I don't know when the Fifth Circuit's going

2   to rule, that's all legal stuff, and then it might not matter

3   because then they might come back at you on this solicitation,

4   but if at the end of the day this evaluation team has already

5   addresses the issues, I think that's why I ordered this to cut

6   to the chase to try to comply with what their concerns are here,

7   and who knows, the government might be willing to go ahead and

8   just forego everything, because it's based on the

9   recommendations made by the evaluation team.

10          In other words, get all your ducks lined up in place

11   from the state end, okay, not criminal end, the state, the

12   placement end, okay, and then we have that lined up.  Get

13   whatever you've lined up to the government, but also to get it

14   to these doctors, and these doctors might approve it.  That

15   might be the cleanest way to proceed.

16          MS. GREENFIELD:  I mean, I do think there's --

17          THE COURT:  It makes sense to me, because even if I

18   revoke him, at the end of the day, as Jill said, it's up to

19   these guys, okay.  And these guys have said that they're not

20   ready to cut him loose.  So whether I revoke him properly or

21   didn't revoke him properly on the marijuana, we go back to the

22   solicitation.  All this is going to take a whole lot of time,

23   okay.  But the worse possible scenario is that I revoke him on

24   the solicitation and they're going to be faced with the same

25   thing any way, so you might as well be working on this now.  And

1    it might make moot the Fifth Circuit.  It might make moot the

2    Fifth Circuit, and we're going to have to come back to me to

3    pursue this solicitation, because at the end of the day, as Jill

4    said, this is what controls right now.

5         If I did nothing.  If Jilt did nothing.  If Emily did

6    nothing, and if you did nothing, Warren, he's there right now

7    receiving the treatment that he needs, and as Jill said, there's

8    nothing, and Emily said there's pending before me right now,

9    okay.  So if, under the normal course of things, if these issues

10   are addressed by you and these guys look at it and say, yeah,

11   he's complied now, they might make a followup recommendation

12   that he be conditionally released under the terms and conditions

13   that your people are agreeing and that these people are

14   accepting.

15        Just another avenue that I'm trying to -- I don't want

16   your guy detained longer than he needs to be detained.  I'm

17   really not.  I don't have anything against him, I really don't,

18   okay.  But at the end of the day, you know, this is -- I mean,

19   this is their recommendation, and I'm not a doctor, so I'm going

20   to follow the recommendation, okay.  So you might as well now

21   either do nothing and wait for the Fifth Circuit to rule, and

22   that's not going to sped up problem unless the Fifth Circuit

23   says he should be cut loose not withstanding that there's still

24   a solicitation charge pending.  I can't believe they're going to

25   do that, so then we're back to square one, and we'll either have

1    a mini on solicitation on whether or not he should be revoked,

2    okay.  And let's say that I revoke him based on that, you can

3    appeal that too, but at the end of the day he's only going to be

4    released when these guys, the evaluation team feel that he

5    should be.

6         MS. GREENFIELD:  And, Your Honor, it's my understanding

7    that the evaluation team never stops working with him.  I mean,

8    their plan is not to keep him until somebody -- you know, it's

9    looking at what's available out on the outside, watching and

10   ever changing, so they're always looking for some way to form

11   those conditions of release.

12        THE COURT:  By the way, I do want the -- James, seal

13   this evaluation, but I do want the Fifth Circuit to see this

14   though.

15        I would like for this to go up as far as the appeal,

16   because I want them to have the full picture as well.

17        MS. GREENFIELD:  And I don't know if that's how we

18   supplement the record.  Can the Court, I guess, do that sua

19   sponte?  I'm not sure.

20        THE COURT:  Can I do that?

21        THE DEPUTY CLERK:  Yes.

22        MS. GREENFIELD:  Because I think we would move to

23   supplement it too, but we also maybe moving to remand, because

24   it seems like Mr. Montgomery's plan is to have two bites at the

25   apple in both jurisdictions, to move forward and the appeal gets

1  heard first, great, or if we get to have some type of

2  evidentiary hearing first.

3          THE COURT:  But at end of the day, we ordered this

4  report, and this report is very clear.  This report is very

5  clear.  I don't think this report is going to change even if the

6  DA's office for whatever reason choose not to prosecute this guy

7  for solicitation.  So at the end of the day, I believe what's

8  contained in this report is going to have to be followed.  The

9  recommendations contained in this report are going to have to be

10  followed, so I would suggest that what you might want to

11  consider doing is addressing these recommendations, because it

12  might moot everything else.

13          MR. MONTGOMERY:  Your Honor, I don't want to take up

14  your time.

15          THE COURT:  No, my time is your time, you know, this is

16  my job, but go ahead.

17          MR. MONTGOMERY:  At the earlier status conference, the

18  Court made a comment, which is, even if this report, even if

19  these doctors come back and say you ought to be released

20  unconditionally, that doesn't mean I'm going to follow it, and

21  that's because it's ultimately your decision as the Judge as to

22  what's going to happen.

23          THE COURT:  Right.

24          MR. MONTGOMERY:  And that's the way it should be.

25          My contention is the report is erroneous.   The

1   conclusion of the experts is erroneous, because they made a

2   determination based on facts that they never examined, and my

3   intention is to have a hearing where I can present facts to the

4   Court so the Court can determine whether or not the state

5   authorities acted reasonably, so that the Court can make a

6   determination as to whether or not Scott Lemoine's response to

7   the state's activities is sane or insane.

8           THE COURT:  Right.  Okay.

9           MR. MONTGOMERY:  And that is the direction that Warren

10  Montgomery is going in.  You can call it two bites at the appeal

11  you can call it whatever you want to.

12          THE COURT:  No, I don't call that at all, but --

13          MR. MONTGOMERY:  But I'm just saying that if you want

14  to know what's the intention of Warren Montgomery of Scott

15  Lemoine Louisiana, it's let's get the facts out, the facts, so

16  that you can the make determination as to whether or not he is

17  suffering a mental condition.  There are plenty of experts who

18  will say all sorts of people are suffering from mental

19  conditions and they've never examined the facts, and so I --

20          THE COURT:  I cannot have this hearing until I have

21  jurisdiction.

22          MR. MONTGOMERY:  Yes, sir.

23          THE COURT:  I hear now what you're telling me, and it

24  would not have gone to this level where these guys are either

25  accurate or inaccurate without my revocation.  You've appealed

1   my revocation, so I feel that I do not have the jurisdiction

2   right now.  It's very simple.

3          MR. MONTGOMERY:  And I understand, Your Honor.  And

4   again, I'm going to address that issue.  I do believe you have

5   jurisdiction.  If you don't, then I've got to go back and

6   reassess my direction.

7          THE COURT:  In other words, you have two arguments.

8   Argument number one is I never should have revoked him to begin

9   with because there never was an appropriate hearing on the

10  misdemeanor issue, on the marijuana issue.  That's issue number

11  one, that's appealed.

12         Issue number two, is, oh, by the way, if you did revoke

13  him properly, and as a result of that revocation he's where he

14  is now that this evaluation team made a mistake, okay, right?

15  That's basically your two arguments.

16         MR. MONTGOMERY:  Yes.  Let me --

17         THE COURT:  Well, if I'm correct with that, then we

18  don't get to number two, whether or not this evaluation team has

19  made a mistake until we determine whether or not I properly

20  revoked him, and that is what's pending before the Fifth

21  Circuit, so I should not be hearing number two, whether or not

22  these guys made a mistake, because then they would have never

23  received this if I was right the first time, until the Fifth

24  Circuit says whether I was right the first time or not.

25         The problem is if the Fifth Circuit says that I was

1  right, then we go ahead and we proceed with number two, okay.

2  If the Fifth Circuit says I was wrong, okay, then this is really

3  irrelevant unless he's revoked again, which the government says

4  that it plans to do by way of on the allegation of solicitation.

5  So I think at the end of the day, what you want to get at is

6  number two, but I'm not going to get to number two while the

7  Fifth Circuit is looking at whether or not number two should

8  have ever taken place.

9           MR. MONTGOMERY:  I understand the Court's position

10          THE COURT:  Address it.

11          MR. MONTGOMERY:  The government wants to revoke him.

12  We don't want him revoked.  We've got to get the facts before

13  the Court so the Court can make the right determination, and my

14  feeling is -- I haven't had the facts until just recently.

15          THE COURT:  Right.

16          MR. MONTGOMERY:  And the facts which I will ask in this

17  omnibus motion and the Court will make a determination at that

18  time.  But I do want the Court to understand that really my goal

19  was to get the information before the Court so that the Court

20  can make a final consideration.

21          Obviously, you know, we were very disappointed that the

22  report came to the conclusion or that the doctors came to the

23  conclusion that they did.  That was a blow to us.  We were

24  hoping that the doctors would say, no, we don't want find this.

25  But that we just have to deal with it as it is.

1        THE COURT:  Okay.

2        MR. MONTGOMERY:  But we don't think that the doctors

3  recommendation, if it's based on insufficient data, is their --

4  you know, we don't find that it's a final decision for the

5  Court.

6        THE COURT:  Right.

7        MR. MONTGOMERY:  Because we don't believe that it was

8  based on accurate data.

9        THE COURT:  I hear you.  Anything else?

10       So really there is nothing before me at this time then.

11       We'll wait until you file your motion which you say

12  you're going to file.

13       Of course, you might want to change it up a little bit

14  after you've had the opportunity to digest this report.

15       MR. MONTGOMERY:  Really I waited, and the only reason I

16  didn't file it before this hearing today, it was my intention

17  to file it earlier, but I didn't file it because I just got the

18  report and I felt it was better for me to come in, listen to the

19  comments of the Court and opposing counsel, and then file it,

20  and I appreciate the Court -- I just want to say I appreciate

21  the Court's willingness to do this, and I think it's the correct

22  approach and that is to expedite this as much as possible.

23       THE COURT:  Warren, I do not want to keep this man

24  detained if he legally should not be detained, that's what my

25  job is, okay.  Of course, I have to work within the parameters

1   of the law, that's why I tried to put this on as fast a tract as

2   I possibly could, so I got this guy up here.

3           I wanted these guys to give us a report as soon as they

4   could so that we all knew what we're dealing with at the end the

5   of day, and now we know what we're dealing with from their end.

6           Now, you might not agree with this or not and that's

7   your job to say why this is incorrect.  But you're not going to

8   let your client fall through the cracks.  I'm not going to let

9   him fall through the cracks.  He's there.  He doesn't want to be

10  there.  I appreciate everything that you're telling me, and

11  that's why I am trying to handle this on as expeditious manner

12  as possible.

13          MR. MONTGOMERY:  Thank you, Your Honor.

14          THE COURT:  All right.  Thank you all.

15          MS. GREENFIELD:  Thank you.

16          THE DEPUTY CLERK:  All rise.

17          Court's in recess.

18          *         *         *         *         *         *

                         C E R T I F I C A T E
19

20      I, Victor D. Di Giorgio, Official United States Court
    Reporter in and for the Eastern District of Louisiana, do hereby
    certify that the foregoing proceedings were taken down by me in
21  shorthand at the time and place aforesaid, transcribed under my
    personal direction and supervision, and that the preceding pages
22  represent a true and correct transcription, to the best of my
    ability and understanding.

23

24
                            S/Victor D. Di Giorgio
25                          Victor D. Di Giorgio, CCR
                            Official U.S. Court Reporter